IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GENERAL MEDICINE, PC, | : | |
| Plaintiff, | : | Case No. C2-05-439 |
| v. | : | Judge Frost |
| MORNING VIEW CARE CENTERS, | : | Magistrate Judge Abel |
| Defendant. | : | |

## Report and Recommendation

Plaintiff General Medicine, PC ("General Medicine") brings this action against Defendant Morning View Care Centers ("Morning View") asserting claims for breach of contract and tortious interference arising out of a contract for General Medicine to provide medical care at six of Morning View's residential health care facilities. This matter is before the Magistrate Judge on Defendant's April 14, 2006 motion to dismiss for want of compliance with Magistrate's discovery order under Rule 37, Fed, R. Civ. P.

The dispute arises from an order compelling discovery which I issued on March 29, 2006. That order required "Plaintiff General Medicine . . . to provide Defendant Morning View with full and complete responses to all discovery requests on or before **April 7, 2006.**" Discovery Order Pg. 7. Plaintiff did provide Defendant with a box of documents, which the latter contends is not fully responsive to the order and hence moves for the sanction of dismissal. Plaintiff maintains that as to some of the requests in dispute that it has produced all the responsive records in its possession; and as to the

remaining requests Plaintiff asserts that it has no documents responsive to them. Defendant's reply brief identified one request for production for which Plaintiff maintains it provided all the documents it has but which Defendant asserts it has failed to provide any responsive documents.  That is Request No. 31, which seeks General Medicine's financial records relevant to the damages it claims in this lawsuit.  Evidence regarding General Medicine's production of documents responsive to Request No. 31 was taken at a hearing held June 12, 2006.

**I. Facts.**

On May 1, 1999, Plaintiff and Defendant entered into six separate contracts, each captioned "Family Medical Management Agreement."  Pl.'s Compl. ¶ 5.  Under the terms of the agreements, General Medicine agreed to manage the medical side of six Morning View senior care facilities.  Its duties included the hiring and management of the medical staff to provide round-the-clock care, and to assure the overall quality of the medical treatment in these facilities.  Pl.'s Compl. ¶ 6.  In return for these services, Morning View paid General Medicine a fixed monthly fee of between $200 and $400 depending on the facility.  Pl.'s Compl. ¶ 7.  Additionally, General Medicine's physicians would be able to collect fees directly from the patients they treated.  *Id.*

The initial term of the agreement was one year at which point it would automatically renew for successive three-year terms.  Pl.'s Compl. ¶ 9.  The agreement was terminable by either side with cause, or it could be terminated on 120 days notice at the

end of a contract period. *Id.* The agreement renewed after the first year, but in the middle of the second three-year term, Morning View canceled the agreements and removed General Medicine from its facilities. On May 5, 2005, General Medicine brought this suit against Morning View for breach of contract and tortious interference alleging that Morning View had no cause to terminate the contract, and that Morning View was actively persuading residents to switch their medical care away from General Medicine physicians, thus interfering with its business.

After being served and answering the complaint, Morning View requested document production from the plaintiff on August 25, 2005. Hearing nothing, on October 21, 2005, Morning View's attorney reminded General Medicine's attorney that the documents were overdue. Plaintiff's attorney responded on November 4, 2005 and stated that he would let Morning View know the following week when the documents would be available.

Slightly more than two months later, on January 5, 2006, Defendant filed a motion to compel discovery, which I granted ordering production of the documents by April 7, 2006. On April 14, 2006, Defendant filed a motion for dismissal of the case under Rule 37 for failure to comply with the discovery order.

Specifically, Defendant complains that Plaintiff did not comply with Document Request Nos. 11 through 16 and 23 through 31. Plaintiff's response to Defendant's assertions of non-compliance fall into two general categories: 1) Plaintiff does not have the documents requested, or 2) Plaintiff has already produced the requested documents.

3

In no response does Plaintiff waive its previously stated objections. The responses can be grouped as follows.

**No responsive documents in Plaintiff's possession: Request Nos. 11-13, 15, 16, 21, 24-28, and 30.** Plaintiff responded that it does not have these documents. Request No. 11 is for a complete listing of the phone company billing records including cell phones for General Medicine, Thomas Prose and Pat Gottsechalk. Request No. 12 seeks all contracts between Morning View Care Center Residents and General Medicine physicians authorizing the latter to act as the resident's attending physician. Request No. 13 asks for any and all paperwork regarding the hospital privileges of General Medicine physicians at any hospital in the state of Ohio.

In response to request Nos. 15, 16 and 21, Plaintiff replied that it did not possess the documents and that Morning View should have copies of them. Request No. 15 asks for reports submitted to Morning View's president, which were required by the contract. Request No. 16 seeks records of General Medicine's participation in "utilization review activities" at the Morning View Care Center facilities. In request No. 21, Morning View asks for records relating to General Medicine's performance of its obligations under the contract– specifically its scope of services.

Request No. 24 was for exhibits attached or referenced in the Facility Management Agreements. Request Nos. 25, 26 and 27 relate to documents General Medicine plans to introduce at trial and the reports and qualifications of any expert witnesses who would testify. In request No. 28, Morning View seeks evidence of General Medi-

cine's effort to mitigate damages. Request No. 30 asks for a copy of any Medicare and Medicad contracts General Medicine or its physicians may have had.

**All responsive documents in Plaintiff's possession produced: Request Nos. 14, 22, 23, 29 and 31.** Plaintiff's response to all these requests was that it had already provided Morning View with these documents and was attaching another copy. Request No. 14 is for documents related General Medicine's "development of bylaws policies, procedures and appropriate committees." Request No. 22 seeks records of General Medicine's review of any health or safety hazards it found at each Morning View care facility. Request No. 23 is for records relating to the regulations for the practitioners who cared for the Morning View residents. Request No. 29 is for records, résumés and other materials indicating the qualifications of General Medicine employees who worked in Ohio. In request No. 31, General Medicine seeks copies of plaintiff's financial records. Defendant notes that these documents were provided in a separate case between the two parties.

In addition to its assertion that General Medicine has failed to comply with the discovery order, Morning View further states that the case does not have the requisite sum at issue to maintain federal court jurisdiction. Using the value of the contracts, Morning View asserts that the maximum award General Medicine would be entitled to is $30,600. Plaintiff counters that, in addition to the value of the contracts, it seeks compensatory and punitive damages for what it claims is Morning View's tortious interference with its business.

## II. Discussion

### A. Jurisdiction

In order for this court to lack jurisdiction due to insufficient amount in controversy, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem.. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). Here, Defendant bases its claim of insufficient amount in controversy on the terms of the contracts between the two parties. Morning View takes the aggregate of the monthly fees for all six facilities and arrives at a term of $1,700 per month. It then multiplies that number by the time remaining on the contracts to arrive at maximum damages of $30,600. In its complaint, General Medicine also asserts a claim for tortious interference with business. Part of the way General Medicine makes money is through fees paid by the nursing home residents to the company's doctors. Plaintiff asserts that Morning View's "eviction" of these doctors from its facilities cost the company a significant amount of money. General Medicine has produced document which it maintains can be used to calculate the stream of patient income it alleges it lost when Morning View terminated the six contracts. On the present record, I cannot say that less than $75,000 is in controversy.

### B. Failure to Comply with Discovery Order

With the exception of Request No. 31, at its core this discovery dispute amounts to Morning View asserting that General Medicine should have more documents than it produced and General Medicine maintaining that it does not have any more documents

6

responsive to the discovery requests. When the requesting party has doubts about the adequacy of a production, it has the right to take discovery about how the producing party maintains its documents. But absent evidence that the response is not true, when a party formally binds itself in response to a discovery request to the position that it does not have documents, there is nothing a court can do.

With respect to Request No. 31, Plaintiff offered Dr. Thomas Mark Prose's testimony that General Medicine produced all documents in its possession that were responsive to the discovery request. Morning View paid General Medicine a $200 - $400 a month fee for its providing a medical director for each of the six facilities at issue in this lawsuit. General Medicine has not produced any documents relating to the payment of these fees, but Dr. Prose–who is the principal of General Medicine–testified that it was paid all fees owed under the contracts through the date of termination. General Medicine's claim for medical director fees is solely a contractual damage for the period beginning with Morning View's termination of the contract.

The other compensatory damage sought is the stream of income generated by the fees patients of the facilities paid General Medicine's physicians for services rendered. The only such fees for which General Medicine has provided any documentation are charges billed Medicare. As to those, Dr. Prose testified that Hearing Exhibit 7, Bates P1807-15 and P1824-25 contain the amounts billed Medicare and the amounts paid by Medicare for professional care given patients at the six Morning View facilities during 1999 - 2002. To determine from these financial summaries the charges billed for patients

at Morning View's facilities, you need the facility codes for them.  Plaintiff has agreed to provide these to Defendant's counsel.

Dr. Prose testified that these financial summaries, Bates P1807-15 and P1824-25, were generated from an electronic data base during the regular course of General Medicine's business.  When physicians rendered services, they filled out a document reflecting that treatment and faxed it to billing.  Billing then keyed it into General Medicine's billing data base.  All of that electronic information was then sent periodically to Medicare, which then reimbursed General Medicine.

Unfortunately, General Medicine switched to a different provider of billing software in 2004.  Billing information from 1999-2002 is no longer in its billing database.  That information is saved on tape or discs, but it would be expensive to retrieve.  General Medicine is willing to make the data available to Morning View, but Morning View would have to bear the expense of accessing the data.

On the expense side, General Medicine has produced little information.  Dr. Prose prepared a spread sheet summary of General Medicine's corporate-wide charge writeoffs as a percentage of charges for 1999-2001.  Bates P1806.  Dr. Prose also identified a chart comparing General Medicine's Ohio Medicare billings for 2001 and 2002.  There is no way to segregate the Medicare billings for the patients in the six Morning View facilities at issue in this lawsuit.  There is also a profit and loss statement January 2001 through the 13th period of 2001.  Bates P1820.  Finally, there is a chart apparently prepared by Dr. Prose, showing billing expenses as a percent of revenue for

1999-2001. Bates P1819.

In determining whether to dismiss an action for failure to cooperate with discovery, the controlling Sixth Circuit case of *Freeland v. Amigo,* 103 F.3d 1271, 1277 (6th Cir. 1997) offers four factors to consider: (1) whether the party acted willfully, in bad faith or with fault; (2) whether any prejudice resulted from the failure to comply; (3) whether or not the party was warned that failure to comply could lead to extreme sanctions; and (4) if less drastic sanctions were previously imposed or should be considered.

<u>Willful Disregard and Bad Faith</u>. Defendant has failed to demonstrate that General Medicine acted with willful disregard for the March 29, 2006 discovery order, nor has it proved that Plaintiff acted in bad faith. Dr. Prose testified that despite his belief that responsive documents had been produced in the earlier litigation regarding Morning View's New Philadelphia facility, he followed his attorney's instructions in the Fall of 2005 to search again for documents responsive to Defendant's requests for production of documents. Similarly, he searched again after receiving the March 29 Order.

<u>Prejudice</u>. General Medicine has now formally responded that it has produced all documents in its possession that are responsive to the discovery requests. While it would have been better had the production been more prompt, Morning View has not identified any discovery it would have taken but now cannot because of the untimely production.

In this regard, General Medicine's response to the discovery requests was that it had not retained a damages expert. The deadline for Plaintiff's damages expert's Rule

9

26(a)(2) disclosures was November 15, 2005. The deadline for completing all discovery was February 28, 2006. Those dates having passed, Plaintiff is barred from offering a specially retained damages expert's testimony at trial.

Defendant is entitled to take Dr. Prose's testimony regarding the documents produced in response to Request No. 31. Defendant's counsel should read Dr. Prose's earlier deposition testimony in the New Philadelphia facilities litigation and limit his deposition questions to matters not adequately covered in that deposition. Dr. Prose's deposition should be scheduled for a mutually agreeable date but no later than July 21, 2006.

The March 1, 2006 deadline for case-dispositive motions has long passed. This case will proceed to trial as scheduled beginning September 18, 2006.

<u>Notice that Failure to Comply Would Lead to Extreme Sanctions</u>. Nothing in the Discovery order indicates that dismissal is imminent. Additionally, dismissal is such a severe sanction, the Sixth Circuit has held that it should only be used as a "last resort." *Biel v. Lakewood Eng'g and Mfg Co.*, 15 F.3d 546, 552 (6th Cir. 1994).

<u>Whether Less Drastic Sanctions were Previously Imposed or Should be Considered</u>. As part of the discovery order, this court imposed the sanctions of attorney's fees on the plaintiff. Defendant has failed to establish facts demonstrating that additional sanctions are warranted. I make this ruling without prejudice to Defendant's right to move for the imposition of additional sanctions at trial should the evidence so warrant.

In an excess of caution, it is ORDERED that should they have a duty to do so under Rule 26(e), Fed. R. Civ. P., Plaintiff and Defendant must supplement their 26(a)(1) disclosures on or before **June 19, 2006.** If Plaintiff supplements its disclosures, it should provide Defendant with copies of any newly identified documents.

### III.   Conclusion

For the reasons stated above, the Magistrate Judge RECOMMENDS that Defendant's April 14, 2006 motion to dismiss (doc. 22) be DENIED.

If any party objects to this Report and Recommendation, that party may, within ten (10) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  *See* 28 U.S.C. §636(b)(1)(B); Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150-152 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

s/Mark R. Abel  
United States Magistrate Judge
